MARY WILLOUGHBY *vs.* THE CITY OF NEW HAVEN ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued November 2d—decided December 21st, 1937.

*Thomas R. Robinson,* with whom, on the brief, were *Vincent P. Dooley* and *Harold C. Donegan,* for the appellant (named defendant).

*Donald E. Cobey,* for the appellant-appellee (plaintiff).

*Samuel E. Hoyt,* with whom was *Spencer S. Hoyt,* for the appellee (defendant The New Haven Savings Bank).

*Charles A. Watrous, James W. Cooper* and *J. Stephen Knight,* filed a brief, as amici curiae.

HINMAN, J. The plaintiff brought her action, to recover damages because of injuries alleged to be due to failure to keep a sidewalk free from defects due to snow and ice upon which she fell on February 15th, 1936, against both the city of New Haven and the defendant bank as abutting property owner. The trial court held the city liable and not the defendant bank. The principal claim of the defendant city is that the trial court erred in holding it instead of the abutting property owner liable, relying upon an act

of the Legislature (Special Acts, 1935, p. 191) as transferring liability from the city to the abutting property owner. That act provided, in § 1, that any action brought against the city claiming damages for injuries under §§ 1419 or 1420 of the General Statutes shall be tried to the court and if judgment be rendered for the plaintiff no costs or judgment fee shall be taxed against the defendant. Section 2 provided that "after the first day of July, 1935, the duty of keeping in reasonable repair sidewalks within the limits of said city shall devolve upon said city and said city is authorized to repair all sidewalks and make appropriation for payment therefor in the month of September, 1935, and annually thereafter." Section 3, which is the provision directly involved in this case, provides that "The duty of keeping sidewalks in said city free from snow and ice shall be upon the adjoining property owner and said city is authorized to make suitable ordinances relating thereto."

At the time of the plaintiff's fall and injury this act was in effect, together with § 1420 of the General Statutes, providing that any person injured by means of a defective highway "may recover damages from the party bound to keep it in repair;" also provisions of the New Haven charter giving the city sole control over streets and walks with power of eminent domain in connection therewith (Special Laws, 1915, p. 220); giving the board of aldermen authority to require that sidewalks be kept free from ice and snow (Special Laws, 1899, p. 429); placing the charge of improvement, repair and cleaning of streets and sidewalks in the bureau of streets under the director of public works (Special Laws, 1899, p. 411); and providing that the superintendent of streets shall remove snow and ice upon the default of an owner required to do so by ordinance, the expense to be a lien upon the

adjoining property, and also recoverable by the city in an action therefor (Special Laws, 1899, p. 413).

Section 771 of the Ordinances (Rev. 1928, p. 520), also in effect at that time, provided that any fall of snow or sleet upon any sidewalk caused by freezing or rain or both "shall be removed or caused to be removed by the owner, tenant, occupant or person having the care, maintenance or rental of the land, building, . . . or premises, fronting upon said sidewalk, . . . within three hours after the cessation of said fall of snow, sleet, or rain, if in the daytime, and if said fall . . . occur in the nighttime, . . . before 9:00 o'clock in the forenoon of the day following;" it also provided for a fine of not more than $10 for each violation. This ordinance remained in effect thereafter until June 1st, 1936, when the board of aldermen adopted an ordinance in substantially the same terms as § 771 except that the concluding paragraph provides that "any person injured in person or property by means of a defective sidewalk . . . caused by an accumulation of snow or ice thereon, shall recover damages therefor from the adjoining property owner of the land." In 1937 the General Assembly passed another act, Special Laws, 1937, p. 982, amending the 1935 act, containing in the second section the same language as that of § 3 of the 1935 act, above quoted, with the addition that the adjoining property owner shall be liable in damages to the person so injured, and providing further for the giving of notice to the property owner similar to that provided in § 1420 of the General Statutes. Upon the situation above outlined the defendant city claims that under the special act of 1935 sole liability to this plaintiff rests upon the defendant bank as the abutting property owner, while the latter claims that liability still rests solely upon the city.

At common law there is no liability upon an abutting property owner for injuries resulting from the effects of natural causes upon streets or sidewalks such as the accumulation of snow or ice. Primarily it is the sole duty of the municipality to keep its streets in reasonably safe condition for travel, and not the duty of private persons. 2 McQuillin, Municipal Corporations, § 681; *Hartford* v. *Talcott,* 48 Conn. 525, 534; *Stevens* v. *Neligon,* 116 Conn. 307, 309, 312, 164 Atl. 661; *Rochester* v. *Campbell,* 123 N. Y. 405, 412, 25 N. E. 937, 938; *Toutloff* v. *Green Bay,* 91 Wis. 490, 494, 65 N. W. 168. Therefore if the liability is or can be shifted from the municipality to the individual it must be accomplished by statutory or charter provision or by ordinance adequately authorized by such provision, and, being the creature of statute or such ordinance, it can be no greater than that specifically imposed thereby. Imposition upon abutting owners of a duty to clear walks of snow and ice, with a provision of a penalty by fine and costs for failure to do so or for clearing the same by the municipality and collection of the cost from the abutting owner, is not sufficient to render the individual, instead of the city, liable for injuries sustained by reason of snow or ice thereon. "The labor performed by those who obey and the fines and expenses paid by those who do not, measure the extent of the advantages ... derived. ... " *Hartford* v. *Talcott,* supra, p. 534; 2 McQuillin, Op. Cit., § 902. "So far as defects . . . result wholly from the operations of nature, the proprietor at whose front they exist is without responsibility for them. Therefore, where ice has accumulated upon the sidewalk to a dangerous extent it is the duty of the municipality to remove or cover it within a reasonable time after its formation." *Hartford* v. *Talcott,* supra, p. 532.

Practically every city has an ordinance similar in substance to the New Haven ordinance in effect at the time of this injury; § 771, Rev. 1928; e. g. see *State* v. *McMahon,* 76 Conn. 97, 55 Atl. 591. Some cities have in their charters provisions, such as those in the New Haven charter from 1917 to 1921 (18 Special Laws, p. 500), that the city shall not be liable for any injury occasioned by ice or snow upon sidewalks, except when combined with some structural defect. See, for example, Waterbury (12 Special Laws, p. 443), as to the effect of which we said that because of this charter provision "delimiting the existing statutory action for injury from snow and ice on a sidewalk" no cause of action can arise due to snow or ice alone. *Wladyka* v. *Waterbury,* 98 Conn. 305, 309, 310, 119 Atl. 149; *Krooner* v. *Waterbury,* 105 Conn. 476, 136 Atl. 93. It has not been held and we are not aware of any case in which it has been claimed that such charter provision imposed upon the property owner any liability to a person injured, for failure to remove snow or ice, and an ordinance merely requiring property owners to do so and providing a penalty for failure is insufficient to create such a liability. *Stevens* v. *Neligon,* supra, p. 313.

In *Stevens* v. *Neligon,* supra, regarding a claim made under a provision of the Meriden charter (quoted p. 310) that "Any person who shall cause any defect in or place or cause to be placed any obstruction on any of the streets . . . shall be held to answer any claim for damages which may be made by reason thereof against said city," we said (p. 312): "We do not construe the act . . . to impose a liability upon a property owner for a defect in the streets of the city which he did not himself create. . . . If it had been the intention of the Legislature to cast upon property owners in Meriden the primary duty of keeping the

streets reasonably safe, which would include the duty to remedy a defect, such as a dangerous condition caused by snow or ice, for the creation of which they were not responsible, it doubtless would have found apt words to create such a duty." The same may be said regarding the claimed intent by the act of 1935 to relieve the city of all liability for injuries arising from snow or ice on sidewalks and impose it upon the abutting property owner. Where the intent is to transfer liability from the municipality to another there is no difficulty in expressing it in unmistakable terms, as was done, for example, in the statutes now §§ 1420 and 3755 of the General Statutes and in the Special Act of 1937, above referred to.

The assistance to the city which is obtained under ordinances making it the duty of abutters to remove snow and ice from the sidewalks adjoining their property relieves, to that extent, the burdens of labor and expense which it otherwise would necessarily, in discharge of its municipal duties, be subjected to, but the city is "in no degree exonerated from its obligations in these particulars in consequence of the adoption of [such] ordinances." The remedy of persons injured for damages sustained in consequence of snow and ice upon a sidewalk remains exclusively against the city. *Kirby* v. *Boylston Market Asso.,* 80 Mass. 249, 252; *Flynn* v. *Canton Co.,* 40 Md. 312, 324; *Rochester* v. *Campbell,* supra, p. 417; *Toutloff* v. *Green Bay,* supra. See also *State* v. *McMahon,* supra, p. 106. The distinction between cases where dangerous conditions have been created by individuals and in which they are held liable for the consequences under their common-law obligations as creators of a nuisance, and those relating to the consequences following neglect of a duty imposed by statute or ordinance to maintain, repair, or clear sidewalks, is manifest and radical. The

decided weight of authority is that no liability to travelers or the city for injuries results from failure to comply with such statute or ordinance. *Rochester* v. *Campbell*, supra, p. 416; Note, 41 A. L. R. p. 217; 93 A. L. R. p. 803. Abutting owners have only been held liable for injuries from defective sidewalks where under charter provisions they were not only charged with the duty of keeping sidewalks in repair but also expressly made liable for injuries occasioned by defective condition thereof. *Willis* v. *Parker*, 225 N. Y. 159, 121 N. E. 810; Note, 41 A. L. R. p. 222.

It is a general rule of construction of statutes or ordinances which impose upon property owners the performance of a part of the duty of a municipality to the public that a legislative intent is indicated, unless it is plainly expressed otherwise, that a breach thereof shall be remediable only by the municipal government or by enforcement of a penalty prescribed therein, and that there is no right of action to an individual citizen specially injured in consequence of such breach. "The most conspicuous cases of this sort are those that deny liability to private suit for violation of the duty imposed by ordinance upon abutting property owners to maintain sidewalk pavements or to remove ice and snow from the walks." *Fielders* v. *North Jersey Street Ry. Co.*, 68 N. J. L. 343, 352, 53 Atl. 404. "When a statute creates an exception to a general rule, it is to be construed strictly and its language is not to be extended beyond its evident intent." *Bickart* v. *Sanditz*, 105 Conn. 766, 772, 136 Atl. 580. In determining whether or not a statute abrogates or modifies a common-law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. "The court is to go no faster and no further than the Legislature has gone."

*Howard* v. *Howard,* 120 Me. 479, 480, 115 Atl. 259; *Hammells* v. *State,* 198 Ind. 45, 52, 152 N. E. 161; *MacHatton* v. *Dufresne,* 121 Me. 221, 223, 116 Atl. 449; *Archer* v. *Equitable Life Assur. Soc.,* 218 N. Y. 18, 25, 112 N. E. 433; *Springfield Fire & Marine Ins. Co.* v. *Fields,* 185 Ind. 230, 233, 113 N. E. 756. A legislative intention not expressed in some appropriate manner has no legal existence. *Comley, State's Attorney, ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 163, 174 Atl. 415.

If the passage of the 1937 amendment is to be accorded any significance with regard to the construction of the 1935 act, it can only be taken as indicating that the latter, in the judgment of the Legislature, was insufficient to evidence an intent to transfer liability from the city to the individual and that it was necessary to expressly provide therefor. Even if it were to be inferred from the amendment that it was the original intent, in 1935, to work a transfer of liability, the presence of such an intent would be without significance unless it was sufficiently evinced by the act then adopted, and the 1937 amendment cannot fairly be regarded as other than a confession that the intent, if existent, was not effectuated by adequate expression.

As we have pointed out, the placing of the duty of keeping sidewalks free of snow and ice upon the adjoining property owner—which was all that § 3 of the 1935 act expressly provided for—of itself would not carry with it to the property owner liability for injuries occasioned by failure to perform that duty. Clearly the further provision only authorizing the city "to make suitable ordinances relating thereto" was insufficient to constitute the express statutory authority which has been so generally and justly held requisite to effect so radical a change of legal responsibility. Liability for damages for sidewalk accidents is poten-

tially formidable—a fall on an icy sidewalk is often serious in its consequences and the damages heavy. It is certainly reasonable that imposition of such a new and serious liability upon an individual may not be accomplished by inference or unless expressly provided. *Heeney* v. *Sprague,* 11 R. I. 456, 461. Beyond that, in the present case, at the time when this plaintiff fell no attempt had been made to transfer liability by ordinance and the only consequences provided for failure to perform the duty imposed by the act was the fine specified in § 771 of the ordinances, and liability to the city for reimbursement of expenses of removal, under the provision of the charter above referred to (Special Laws, 1899, p. 413); another consideration is that there was no provision in the 1935 act for notice, to the abutter, of any accident, similar to that which is so essential to liability of a municipality (*Marino* v. *East Haven,* 120 Conn. 577, 182 Atl. 225) it being first made in the 1937 act. The abutting owner was not thereby made responsible to individuals. *Rupp* v. *Burgess,* 70 N. J. L. 7, 9, 56 Atl. 166; *Fielder* v. *North Jersey Street Ry. Co.,* supra, p. 356; *New Castle* v. *Kurtz,* 210 Pa. St. 183, 187, 59 Atl. 989; *Taylor* v. *Lake Shore & M. S. R. Co.,* 45 Mich. 74, 7 N. W. 728.

The trial court was right in holding that liability to the plaintiff rests upon the city and not upon the defendant bank. This conclusion also disposes of the plaintiff's assignments of error as they pertain to that question and to her claim that, if the bank instead of the city be held liable, she would be entitled to a judgment against the bank without the necessity of a new trial.

The appellant city also seeks corrections of the finding which, if granted, would undermine the conclusions reached by the trial court as to the unsafe condition of the sidewalk and that the length of time the

condition had existed was such that the city had constructive notice thereof and a reasonable opportunity to remedy it. It is found, with sufficient support in the evidence, that accumulated ice had been permitted to remain for several days upon the sidewalk on which the plaintiff fell, that it was covered at the time with about five inches of solid, uneven and slippery ice and that there was, at that time, no sand or other abrasive substance upon its surface. It appears by the records of the United States weather bureau and to be undisputed, that on February 13th there was a snow fall beginning in the morning, continuing the rest of the day, amounting to three and eight-tenths inches at midnight and until 1 a. m. on the 14th when it turned to sleet making a heavy fall between then and 5 a. m., then slackening up slowly until afternoon with light flurries up to 3.30; this fall of sleet formed a mushy cover on streets and walks where traffic was heavy. On the 15th there was a light rain changing to sleet and then to snow in the morning. From noon on the weather was clear and sunny and the temperature which was at a minimum of twenty-five at 2 a. m., rose to a maximum of forty-two at 3 p. m. For several days previous the temperature had been below freezing. The plaintiff's fall occurred at about 6 o'clock in the evening and the only testimony as to the condition at that time was that there was no slush or water at the place.

The trial court found that "whatever precipitation occurred on February 13th, 14th and 15th, if having any effect at all, merely kept the dangerous condition in a continued state of danger" and if involved at all in the accident "contributed to it only as an incidental and remote cause." These findings are attacked, but there was some evidence, which it was open to the court to believe, that notwithstanding the successive preceding storms the condition of the walk remained

substantially the same during them and up to and at the time of the plaintiff's fall. Therefore these findings must stand and, with the other facts found, are sufficient to bring this element of the case within the principle announced in *Keating* v. *New London,* 104 Conn. 528, 531, 133 Atl. 586, that "when once a defective condition due to ice and snow has become established, the fact that thereafter, by reason of storms and melting, that condition varies in some slight degree, will not relieve the city of liability and will not in itself preclude a finding of constructive notice to it." In that case, as here, there had been a succession of storms on the days preceding the plaintiff's fall. It was found that it might reasonably be concluded that the defective condition of the walk, due to accumulated snow and ice, had remained substantially unchanged up to the time of the accident.

There was no error, as assigned by the city, in the admission of two photographs taken a week after the fall but which were testified to represent substantially, as to thickness of ice upon the walk, the same condition as observed on the day of the plaintiff's fall. *McGar* v. *Bristol,* 71 Conn. 652, 655, 42 Atl. 1000; *Temple* v. *Gilbert,* 86 Conn. 335, 343, 85 Atl. 380; 2 Wigmore, Evidence (2d Ed.) §§ 790, 792. The finding does not afford information as to the scope of direct examination necessary to test the exclusion, as not within it, of a question on cross-examination.

There is no error.

In this opinion the other judges concurred.